```
Gerald Singleton (SBN 208783)
gsingleton@singletonschreiber.com
Kimberly Trimble (SBN 288682)
ktrimble@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Suite 1025
San Diego, California 92108
P: (619) 771-3473
F: (619) 255-1515
```

Attorneys for Plaintiff

# UNITED STATES DISTRICT OF CALIFORNIA

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA ARGUELLES, individually, and as a successor in interest to her deceased son, A.I.A., a minor.<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; and OFFICER DOES 1-2,<br><br>Defendants. | Case No. '23CV0321 H    AGS<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   INTRODUCTION

1. Plaintiff Brenda Arguelles (hereinafter "Plaintiff" or "Ms. Arguelles") sues to recover damages arising from the wrongful death of her son, A.I.A., a minor.

2. From May 30, 2021, to September 8, 2021, A.I.A. was a sixteen-year-old juvenile detainee in County custody at Juvenile Hall at 2801 Meadow Lark Drive, San Diego, CA 92123 (hereinafter "Juvenile Hall"). A.I.A. was set to be released on September 26, 2021.

3. During his time in Juvenile Hall, A.I.A. would call his mother regularly.

4. On September 5, 2021, Juvenile Hall staff checked A.I.A. into the emergency room of the on-site clinic due to allegations of fentanyl use and vomiting. He was returned to Juvenile Hall on or about September 6, 2021.

5. Ms. Arguelles was never contacted by anyone at Juvenile Hall regarding this incident.

6. On the evening of September 7, 2021, at approximately 8:00 p.m., A.I.A. went to the cell of another juvenile detainee, who was a dealer of fentanyl in the facility.

7. The next morning, at approximately 7:04 a.m., A.I.A. was found in his cell, on his bunk, with no visible signs of life. A.I.A. had died from a fentanyl overdose.

8. Ms. Arguelles, on behalf of herself and her son's estate, now sues the County of San Diego and individual defendants for damages, pursuant to 42 U.S.C. § 1983 and state law.

## II.   JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, as Plaintiff asserts causes of action arising under 42 U.S.C. § 1983 for violation of his constitutional rights. The Court has supplemental jurisdiction over the corresponding state-law claims pursuant to 28 U.S.C. § 1367.

10. With respect to the state-law causes of action, Plaintiff has complied with the requirements of the California Government Claims Act. Plaintiff presented her government tort claim to County of San Diego on March 8, 2022, and the County denied the claim on September 2, 2022. *See* Cal. Gov't Code §§ 900 et seq.

11. Pursuant to 28 U.S.C. § 1391, venue is proper in this District, as the events giving rise to this action occurred in the County of San Diego, California, which is located within the Southern District of California.

## III.   PARTIES

12. Plaintiff Brenda Arguelles is and was, at all times relevant to this complaint, residing in San Diego, California. Ms. Arguelles is the mother of decedent A.I.A. In addition to suing individually for her personal damages arising from A.I.A.'s death,

Ms. Arguelles sues as A.I.A.'s sole successor in interest to prosecute those claims that survived A.I.A.'s death. *See* Cal. Civ. Proc. Code § 377.30.  *See* Exhibit A: Declaration of Brenda Arguelles.

13. Defendant County of San Diego ("County") is and was, at all times relevant to this complaint, a municipal entity duly organized under California law. The County's Probation Department is the agency responsible for the juvenile detention facilities for the County. The County's Probation Department manages and operates Juvenile Hall.

14. Defendants Officer Does 1-2 are Juvenile Hall Probation Officers for the County of San Diego's Probation Department. Upon information and belief, Defendants Officer Does are responsible for A.I.A.'s death and performed the relevant acts under color of law and within the course and scope of their employment as Juvenile Hall Probation Officers for the County of San Diego's Probation Department. These Defendants are sued in their individual capacities (as to the claims under section 1983) and as employees of the San Diego County Probation Department (as to the state law claims). Plaintiff does not currently know the names of the Doe defendants responsible for A.I.A.'s death. Thus, Plaintiff will amend this Complaint to identify the individuals after learning their identities.

### IV.   FACTS

15. A.I.A. was the eldest biological child of Brenda Arguelles. A.I.A. was also the older brother to three younger sisters. Prior to his death, A.I.A. loved to skateboard and spend time with his friends. A.I.A. had difficulties in school, but upon graduating from high school, he had plans to enroll in trade school and ultimately become a mechanic.

16. On or about May 31, 2021, A.I.A. was taken into custody at Juvenile Hall after being admitted to Rady's Children's Hospital for alcohol, marijuana, and methamphetamine abuse. He was set to be released on September 26, 2021.

17. On July 31, 2021, A.I.A. underwent a psychiatric assessment at the request of his clinician, due to A.I.A.'s reports of night terrors and insomnia. The County's assessment records included A.I.A.'s clinical history of extreme isolation and using drugs

to escape symptoms of hopelessness, insomnia, irritability, and feeling sad more often than not—and that A.I.A. had a poor history of coping skills when experiencing these symptoms. The records also reflected A.I.A.'s history of substance abuse with alcohol, marijuana, methamphetamine, and Xanax, and that A.I.A.'s substance abuse had caused Ms. Arguelles, on one occasion, to bring A.I.A. to the emergency room.

18. A.I.A. was enrolled in Character Traits and Alcohol and Drug related treatment groups through Juvenile Hall's Urban Camp program.

19. While in custody, A.I.A. was diagnosed with acute post-traumatic stress disorder and adjustment disorder with mixed disturbance of emotions and conduct. On August 1, 2021, A.I.A. was prescribed Zoloft, Melatonin, and Prazosin.

20. In early August of 2021, Ms. Arguelles visited her son at Juvenile Hall. Prior to being detained, A.I.A. was very thin. But during her visit, Ms. Arguelles noticed that her son appeared bloated, swollen, had bruises on his cheeks and palms, and was acting lethargic. This was the last time Ms. Arguelles would see her son, in person, before his death.

21. After her last in-person visit with A.I.A. and leading up to his death, Ms. Arguelles communicated with A.I.A. several times via videocall or telephone. After each subsequent communication, Ms. Arguelles observed her son becoming progressively more disoriented, confused, and slow. A.I.A. even fell asleep mid-call on multiple occasions. On one occasion, Ms. Arguelles asked A.I.A. what was wrong. A.I.A. told her that his medications had been increased. No County employee had informed Ms. Arguelles of that increase.

22. Although Ms. Arguelles attempted to contact County personnel several times to share her concerns about A.I.A., no one took her call or responded. In fact, Ms. Arguelles was not contacted by anyone from Juvenile Hall until after A.I.A. had died.

23. Over time, Ms. Arguelles' phone calls with A.I.A. became shorter, because A.I.A. was unable to hold a conversation. A.I.A.'s behavior was like that of someone who was not fully mentally present.

24. On September 3, 2021, Ms. Arguelles spoke briefly with A.I.A. over the phone. A.I.A. stated that he was very tired, but he assured Ms. Arguelles that he would talk to her soon. These were the last words Ms. Arguelles heard from her son.

25. On September 5, 2021, A.I.A. was checked in to the on-site clinic at Juvenile Hall. Although A.I.A. claimed his symptoms were due to something he ate, A.I.A. was checked into the clinic based on vomiting and allegations of suspected fentanyl use. A.I.A. reported a headache, nausea, and stomach pain. The nurse who saw A.I.A. reported that he appeared lethargic and bloated. On or about September 6, 2021, A.I.A. was discharged from the emergency room and was returned to his cell at Juvenile Hall.

26. At no point before A.I.A.'s death was Ms. Arguelles ever contacted by anyone from Juvenile Hall or the clinic regarding either A.I.A.'s suspected fentanyl use or his emergency visit to the clinic.

27. On the evening of September 7, 2021, A.I.A. left his cell to go to the cell of another juvenile detainee. Defendants Officer Does 1 and 2 were assigned to supervise A.I.A. in Juvenile Hall that evening. These Defendants knew, or should have known, that A.I.A. had a drug-abuse problem, that A.I.A. had just returned from the Clinic based on suspected fentanyl use, and that A.I.A. was visiting the cell of a detainee who was distributing drugs. Defendants Officer Does 1 and 2 knew, or should have known, that this detainee, and others, were dealing fentanyl inside the facility on a regular basis. Despite this knowledge, Defendant Officer Does 1 and 2 permitted A.I.A. to visit the drug dealer's cell, without supervision.

28. After A.I.A returned to his cell on the evening of September 7, 2021, Defendants Officer Does 1 and 2 failed to conduct proper "safety checks" of A.I.A.'s cell. A.I.A. was found unresponsive in his cell the next morning. Proper safety checks of A.I.A. would have revealed that A.I.A., while still alive, was suffering from a fentanyl overdose.

29. On the morning of September 8, 2021, a medical emergency was called in to both 911 and the on-site clinic. A.I.A. was found on his bunk, lying on his back, showing purplish discoloration on his left arm, left leg, and left side of his torso. Dried foam had

accumulated around his nose and mouth. Pink-colored vomit was present on his upper chest, and his arms were stiff in a decorticate position. His right leg was straight, and his left leg was bent with the knee facing outward. A.I.A. displayed no visible signs of life.

30. On September 8, 2021, Defendant County of San Diego reported that a presumptive test confirmed that (1) there were no immediate signs of trauma or assault and (2) A.I.A. had tested positive for fentanyl.

31. Later that day, on September 8, 2021, Ms. Arguelles learned that her son had died.

32. San Diego Probation Office policies and procedures posts all current policies and procedures online at: https://www.sandiegocounty.gov/content/sdc/probation/Probation_Policies.html (last accessed Oct. 27, 2022) (hereinafter "SD Probation Policies").

33. SD Probation Policies § 5 covers Facility Operations. In a subsection entitled Late Night Shift Security Practices, the policies state that the "critical period prior to midnight is when most problems…are likely to occur." *Id.* at § 5.5.9.2 ("Critical Period"). "To achieve maximum alertness during this period, officers are not permitted to watch television or listen to the radio before midnight. Safety Checks shall be made at least every fifteen (15) minutes and they should be sufficiently varied so as not to establish a set routine or pattern." *Id.* It then refers to another section that covers Safety Checks.

34. A later section entitled "Daily Shift/Safety Check Report Form" indicates that "all officers are responsible for conducting Safety Checks on time (every 15 minutes per Title 15, Section 1328)," and that the "Shift Leader assumes primary responsibility for ensuring that Title 15 requirements regarding Safety Checks are completed on their shifts." *Id.* at § 5.6.7.3 ("Officer Assignments").

35. The section entitled "Safety Checks" states that "Direct visual observation of all youth shall occur at least every 15 minutes during hours when youth are asleep or otherwise confined to their rooms." *Id.* at § 5.6.8.1 ("Introduction").

36. That section further explains that "Failure to act in accordance with Title 15

Section 1328 (regulations on Safety Checks) presents serious implications for youth safety and is a potential source of litigation for staff, the facility, the Probation Department and the County of San Diego. To avoid extensive liability and ensure the safety of youth entrusted to our care, staff shall be knowledgeable of and adhere to the policies established in this section." *Id.*

37. The policies require that "All Safety Checks shall consist of direct observation of youth by officers." *Id.* § 5.6.8.6 ("Direct Observation"). In particular, "Officers shall see each youth to assure that he/she is alive and not experiencing any observable trauma or engaged in any dangerous or forbidden activity before terminating the observation." *Id.* The policy explicitly states that "It is through strict adherence to this mandate of personal observation that safety, order and control of the institution are maintained." *Id.*

38. The policies also explicitly list the procedures that officers "shall" engage in when conducting a Safety Check. *Id.* § 5.6.8.9. It explains "To successfully complete a safety observation it is imperative that staff see signs of life. Actual signs of life are seeing movement of the youth, including the rise and fall of the youth's back and chest while breathing; or seeing the youth's skin and hearing them breath/snore, or the youth responds to verbal engagement."

39. SD Probation Policies § 2 covers Staffing Levels and Chain of Command. It requires staffing for Juvenile Facilities that includes "at all times, a minimum of one person on duty in the classification of Supervising Probation Officer (SPO), or above, or have a minimum of one person on duty that has been designated to act in the capacity of an SPO." *Id.* § 2.2.2. It also requires "at least one sworn officer present in each living unit/dorm whenever there is a youth in the living unit/dorm." *Id.*

40. Juvenile detention facilities are required to abide by "minimum officer to youth ratio established by the Board of State and Community Corrections." *Id.* § 2.2.3. Those ratios state "During the hours that youth are asleep, one wide-awake child supervision staff member shall be on duty for each 30 youth in the facility." *Id.* But a

"minimum of two wide-awake child supervision staff members shall be on duty at all times, regardless of the number of youth in the facility, unless an arrangement has been made for backup support services which allow for immediate response to emergencies." *Id.*

41. SD Probation Policies § 5.14 covers Security and Contraband. It explains "Contraband control is a necessary safety and security precaution designed to prevent injury to youth, staff and visitors." *Id.* § 5.14.4.1. It further states that the "control and confiscation will further prevent medical problems, which could occur as a result of an overdose of hoarded medication, injury, illness, or (attempted) suicide." *Id.*

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 – Deliberate Indifference to Risk of Serious Harm**

**(By Plaintiff, as A.I.A.'s Successor in Interest, against Defendants Officer Does 1 and 2)**

42. All prior paragraphs are incorporated herein by this reference.

43. Ms. Arguelles asserts this cause of action as A.I.A.'s successor in interest.

44. By the evening of September 7, 2021, and continuing through to A.I.A.'s death on September 8, 2021, Defendants Officer Does 1 and 2 knew:

   a. that A.I.A. had a substance-abuse problem;
   b. that A.I.A. would use drugs in Juvenile Hall, including fentanyl;
   c. that on September 5, 2021, A.I.A. was sent to the emergency room in the Clinic due to allegations of fentanyl use;
   d. that fentanyl is a highly potent opioid with a substantial risk of a fatal overdose;
   e. that detainees in Juvenile Hall were actively obtaining fentanyl and distributing fentanyl to other detainees;
   f. that, on the evening of September 7, 2021, A.I.A. left his cell and visited another juvenile detainee who was a dealer of illicit drugs in Juvenile Hall;

  g. that, by the time A.I.A. was headed back to his cell after visiting the known drug dealer on the evening of September 7, 2021, A.I.A. faced a substantial risk of serious harm.

  h. that, by the time A.I.A. was headed back to his cell after visiting the known drug dealer on the evening of September 7, 2021, A.I.A.'s condition and circumstances put him at substantial risk of suffering serious harm, such that any reasonable officer would have understood the high degree of risk involved if no measures were taken to abate or reduce that risk.

45. Defendants Officer Does 1 and 2 were deliberately indifferent to A.I.A.'s serious medical need and substantial risk of harm; Defendants intentionally failed to take reasonable measures to address, abate, or reduce the risk of harm by, among other things:

  a. permitting A.I.A. to visit the cell of a known drug dealer, without supervision, immediately after A.I.A.'s return from emergency care for suspected fentanyl use;

  b. failing to conduct proper safety checks of A.I.A.'s cell after his meeting with the drug dealer;

  c. failing to take appropriate measures to eliminate or reduce the presence of fentanyl on A.I.A.'s floor in Juvenile Hall;

  d. failing to take reasonable measures to prevent the exchange of fentanyl, between detainees, after it was suspected to be present in Juvenile Hall; and

  e. failing to monitor A.I.A. after he was suspected of obtaining fentanyl prior to his death.

46. These responses, or lack thereof, to A.I.A.'s serious medical needs and risk of harm amounted to Defendants' reckless disregard of an excessive risk to A.I.A.'s health and safety.

47. By being deliberately indifferent to A.I.A.'s substantial risk of serious harm, Defendants violated A.I.A.'s:

    f. Eighth Amendment right to be free from cruel and unusual punishment while in Defendants' custody;

    g. Fourteenth Amendment right to be free from deprivation of life without due process of law while in Defendants' custody.

48. As an actual and proximate cause of Defendants' deliberate indifference to A.I.A.'s substantial risk of serious harm, A.I.A. suffered (1) damages prior to his death, including those arising from his pre-death pain and suffering, and (2) death. Plaintiff seeks compensatory damages for this harm.

49. Defendants Officer Does 1 and 2 acted with deliberate and reckless disregard of A.I.A.'s constitutionally protected rights. Plaintiff thus seeks an award of punitive damages against Defendants in an amount sufficient to punish this conduct and to deter such conduct in the future.

50. Plaintiff is further entitled to costs and reasonable attorney's fees under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 – Substantive Due Process Violation**

**(By Plaintiff, as an Individual, Against Defendants Officer Does 1 and 2)**

51. All prior paragraphs are incorporated herein by this reference, including the allegations pertaining to (1) Defendants' knowledge of the substantial risk to A.I.A.'s health and life, and (2) Defendants' deliberate indifference to that risk and reckless disregard of A.I.A.'s rights and the consequences of failing to take measures to address, abate, or reduce that risk.

52. With respect to A.I.A., Defendants Officer Does 1 and 2 were not faced with rapidly evolving circumstances between September 6, 2021, and September 8, 2021. Rather, they knew A.I.A.'s history of substance abuse, knew of active and ongoing fentanyl dealing between detainees, and permitted A.I.A. to visit the cell of a detainee known to be

dealing drugs in Juvenile Hall. Defendants had time to deliberate and decide on how they were going to address these circumstances and the obvious risk to A.I.A.'s health and safety.

53. Defendants' intentional failure to take reasonable measures to address this serious risk to A.I.A.'s health and life was conscience-shocking conduct, in violation of the Fourteenth Amendment.

54. Defendants' unconstitutional conduct was the actual and proximate cause of A.I.A.'s death and the deprivation of Ms. Arguelles' Fourteenth Amendment right as a parent to enjoy the familial companionship and society of her son.

55. As a direct and foreseeable result of this denial of substantive due process, Plaintiff suffered economic and non-economic damages, in an amount to be determined at trial, including funeral expenses and loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support. Plaintiff seeks compensatory damages for this harm.

56. Defendants acted with deliberate and reckless disregard of Plaintiff's constitutionally protected rights. Plaintiff thus seeks an award of punitive damages against Defendants in an amount sufficient to punish this conduct and to deter such conduct in the future.

57. Plaintiff is further entitled to costs and reasonable attorney's fees under 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION

### Wrongful Death

**(By Plaintiff, as an Individual, Against Defendants Officer Does 1 and 2)**

58. All prior paragraphs are incorporated herein by this reference.

59. At the time of his death, A.I.A. had no spouse or issue. Thus, Plaintiff, as A.I.A.'s parent, has standing to assert a cause of action for the wrongful death of A.I.A. *See* Cal. Civ. Proc. Code § 377.60.  *See* Exhibit A: Declaration of Brenda Arguelles.

60. As alleged above, A.I.A. died as a result of tortious conduct by Defendants Officer Does 1 and 2, including Defendants' deliberate indifference to the serious and obvious risk to A.I.A.'s health and life.  A.I.A.'s death was, therefore, "wrongful" for purposes of a claim for damages under California Code of Civil Procedure section 377.60. *See Estate of Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1118 (E.D. Cal. 2013).

61. Further, this unconstitutional deliberate indifference to the health and safety of a person in custody constitutes a violation of California Civil Code, section 52.1, as Defendants' blatant failure to observe and safeguard the person against obvious harm is inherently coercive. *See Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018).

62. Defendants' negligence provides an additional independent basis for Plaintiff's wrongful death claim.  A.I.A. was particularly vulnerable and dependent on the custodial personnel at Juvenile Hall, including Defendants Officer Does 1 and 2, for protection, monitoring, and safe housing. In turn, Defendants had substantial control over A.I.A.'s safety and welfare. It was reasonably foreseeable that A.I.A. would need monitoring, supervision, and other measures to address, abate, or reduce the substantial and obvious risk to A.I.A.'s health and safety. As a result, a special relationship existed between Defendants and A.I.A. while A.I.A. was housed in Juvenile Hall, and these Defendants owed A.I.A. a corresponding duty of reasonable care.

63. Defendants Officer Does 1 and 2 breached their duty of care by:
   a. permitting A.I.A. to visit the cell of a known drug dealer, without supervision, immediately after A.I.A.'s return from emergency care for suspected fentanyl use;
   b. failing to conduct proper safety checks of A.I.A.'s unit after his meeting with the drug dealer;
   c. failing to take appropriate measures to eliminate or reduce the presence of fentanyl on A.I.A.'s floor in Juvenile Hall;
   d. failing to take reasonable measures to prevent the exchange of fentanyl,

        between detainees, after it was suspected to be present in Juvenile Hall; and

    e. failing to monitor A.I.A. after he was suspected of obtaining fentanyl prior to his death.

64. Defendants' tortious conduct – including both negligent conduct and deliberate indifference to A.I.A.'s safety – was the proximate cause of A.I.A.'s death, which was a direct and foreseeable result of that tortious conduct.

65. Further, as a direct and foreseeable result of A.I.A.'s wrongful death, Ms. Arguelles has suffered economic and non-economic damages, in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, including but not limited to funeral expenses and loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support. Plaintiff also seeks the statutory remedies set forth by sections 52 and 52.1 of the California Civil Code, including treble damages and attorney's fees.

## FOURTH CAUSE OF ACTION

### Negligence (Survival Claim)

**(By Plaintiff, as A.I.A.'s Successor-in-Interest, against Defendants Officer Does 1 and 2)**

66. All prior paragraphs are incorporated herein by this reference.

67. Ms. Arguelles asserts this cause of action as A.I.A.'s successor in interest. *See* Cal. Civ. Proc. Code § 377.30.

68. As set forth above, in light of the special relationship between a juvenile detainee and those government officers in charge of the detainee's health and safety, Defendants Officer Does 1 and 2 owed A.I.A. a duty of reasonable care.

69. And as set forth above, Defendants Officer Does 1 and 2 breached that duty by:

    a. permitting A.I.A. to visit the cell of a juvenile detainee they knew or should have known to be a drug dealer, without supervision, immediately

        after A.I.A.'s return from emergency care for suspected fentanyl use;

    b. failing to conduct proper safety checks of A.I.A.'s cell after his meeting with the drug dealer;

    c. failing to take appropriate measures to eliminate or reduce the presence of fentanyl on A.I.A.'s floor in Juvenile Hall;

    d. failing to take reasonable measures to prevent the exchange of fentanyl, between detainees, after it was suspected to be present in Juvenile Hall; and

    e. failing to monitor A.I.A. after he was suspected of obtaining fentanyl prior to his death.

70. Defendants' negligence was the proximate cause of A.I.A.'s pain, suffering, and death, which were a direct and foreseeable result of that negligent conduct.

71. Plaintiff, as A.I.A.'s successor-in-interest, seeks compensatory damages for the harm A.I.A. suffered before his death, *including pain and suffering*. Recently amended section 377.34, subdivision (b), of the California Code of Civil Procedure provides: "Notwithstanding subdivision (a), in an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, *the damages recoverable may include damages for pain, suffering*, or disfigurement if the action or proceeding was granted a preference pursuant to Section 36 before January 1, 2022, or was *filed on or after January 1, 2022, and before January 1, 2026*."

## FIFTH CAUSE OF ACTION

**Violation of Cal. Civ. Code § 52.1 (Bane Act) (Survival Claim)**

**(By Plaintiff, as A.I.A.'s Successor-in-Interest, Against Defendants Officer Does 1- and 2)**

72. All prior paragraphs are incorporated herein by this reference.

73. Ms. Arguelles asserts this cause of action as A.I.A.'s successor in interest. *See* Cal. Civ. Proc. Code § 377.30.

74. As alleged above, A.I.A. died as a result of unconstitutional conduct by Defendants Officer Does 1 and 2, including Defendants' deliberate indifference to the serious and obvious risk to A.I.A.'s health and life. This deliberate indifference to the health and safety of a person in custody constitutes a violation of California Civil Code, section 52.1, as (1) Defendants acted with reckless disregard to A.I.A.'s constitutional rights, and (2) Defendants' intentional failure to safeguard a juvenile detainee against obvious harm is inherently coercive. *See Lapachet*, 313 F. Supp. 3d at 1195 (E.D. Cal. 2018).

75. Defendants' violation of section 52.1 was the proximate cause of A.I.A.'s pain, suffering, and death, which were a direct and foreseeable result of Defendants' conduct.

76. Plaintiff, as A.I.A.'s successor-in-interest, seeks compensatory damages for the harm A.I.A. suffered before his death, including pain and suffering. *See* Cal. Civ. Proc. Code § 377.34(b). Plaintiff also seeks the statutory remedies set forth by sections 52 and 52.1 of the California Civil Code, including treble damages and attorney's fees.

## SIXTH CAUSE OF ACTION

**Violation of Cal. Gov. Code § 845.6 (Survival Claim)**

**(By Plaintiff, as A.I.A.'s Successor-in-Interest, Against Defendant County)**

77. All prior paragraphs are incorporated herein by this reference.

78. Ms. Arguelles asserts this cause of action as A.I.A.'s successor in interest. *See* Cal. Civ. Proc. Code § 377.30.

79. The California Government Code provides that "*the public entity* where the employee is acting within the scope of his employment, is liable if the employee knows *or has reason to know* that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov. Code § 845.6 (emphasis added).

80. Here, the Probation Department officers assigned to A.I.A.'s floor, Does 1 and 2, had reason to know that A.I.A. needed immediate medical care. Specifically, with

knowledge that drug-dependent A.I.A. had visited the cell of drug-dealer detainee, those officers failed to conduct proper "safety checks" of A.I.A. at least every fifteen minutes on the evening of September 7, 2021, into the morning of September 8, 2021. Thus, the "knowledge" element of section 845.6 is satisfied; the officers "had reason to know" of A.I.A.'s urgent medical need, because they had an obligation to conduct proper safety checks that would have revealed this medical need. *See Schmitz v. A. Asman*, Case No. 2:20-cv-00195, 2021 WL 3362811, at *16 (E.D. Cal. Aug. 3, 2021). Further, due to the absence of proper safety checks, the officers failed to take reasonable action to summon immediate medical care.

81. The officers' violation of section 845.6 was the proximate cause of A.I.A.'s pain, suffering, and death, which were a direct and foreseeable result of Defendants' conduct.

82. Plaintiff, as A.I.A.'s successor-in-interest, seeks compensatory damages for the harm A.I.A. suffered before his death, including pain and suffering. *See* Cal. Civ. Proc. Code § 377.34(b).

83. Because these officers were acting within the scope of their employment with the San Diego County's Probation Department, Defendant County of San Diego is liable for the damages arising from the officers' violation of section 845.6. *See* Cal. Gov. Code §§ 815.2, 845.6.

## SEVENTH CAUSE OF ACTION

### Wrongful Death

### (By Plaintiff, as an Individual, Against Defendant County)

84. All prior paragraphs are incorporated herein by this reference.

85. At the time of his death, A.I.A. had no spouse or issue. Thus, Plaintiff, as A.I.A.'s parent, has standing to assert a cause of action for the wrongful death of A.I.A. *See* Cal. Civ. Proc. Code § 377.60.

86. As set forth above, in violation of Government Code section 845.6, (1) the Probation Department officers assigned to A.I.A.'s floor failed to conduct the

required "safety checks" of A.I.A. from the evening of September 7, 2021, into the morning of September 8th; (2) these officers therefore "had reason to know" of A.I.A.'s urgent medical need; (3) these officers failed to take reasonable action to summon medical care; and (4) this failure proximately caused A.I.A.'s death.

87. The officers' violation of section 845.6 constitutes a "wrongful act" within the meaning of California Code of Civil Procedure, section 377.60, providing the requisite ground for Plaintiff's wrongful death claim. *See Villarreal v. County of Monterey,* 254 F.Supp.3d 1168, 1190-91 (N.D. Cal. 2017).

88. Because these officers were acting within the scope of their employment with the San Diego County's Probation Department, Defendant County of San Diego "is liable." *See* Cal. Gov. Code § 845.6.

89. As a direct and foreseeable result of A.I.A.'s wrongful death, Plaintiff has suffered economic and non-economic damages, in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, including but not limited to funeral expenses and loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

## VI. PRAYER FOR RELIEF

90. Pursuant to the foregoing causes of action, Plaintiff prays that judgment be rendered in favor of Plaintiff, and against Defendants, for the following relief:

   a. on all causes of action, that compensatory damages be awarded as permitted by federal and state law, in amounts to be determined at trial;

   b. on the First and Second Causes of Action, that punitive damages be awarded against the individual defendants, as permitted by federal law to be determined at trial;

   c. on the First and Second Causes of Action, that reasonable attorney fees, expenses, and costs of suit be awarded pursuant to 42 U.S.C. § 1988;

   d. on the Third and Fifth Causes of Action, that reasonable attorney fees be awarded pursuant to California Civil Code § 52.1(i), and treble damages

under Civil Code §§ 52, 52.1(c);

e. on the Third, Fourth, Sixth, and Seventh Causes of Action, that reasonable attorney fees be awarded under California Code of Civil Procedure §1021.5;

f. costs of suit; and

g. any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

## VII.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution, Plaintiff hereby demands a trial by jury of this action.

Dated: February 17, 2023               SINGLETON SCHREIBER, LLP

                                        By:   */s/ Kimberly S. Trimble*
                                              Kimberly S. Trimble
                                              Attorneys for Plaintiff
                                              Brenda Arguelles